943 So.2d 716 (2006)
David Charles PONDER, Appellant
v.
Leonila L. PONDER (Creekmoore), Appellee.
No. 2005-CA-00354-COA.
Court of Appeals of Mississippi.
April 25, 2006.
Rehearing Denied December 5, 2006.
*717 George M. Mitchell, Eupora, attorney for appellant.
Leonila L. Ponder, Creekmoore, Appellee, pro se.
Before LEE, P.J., IRVING and ISHEE, JJ.
LEE, P.J., for the Court.
¶ 1. David Charles Ponder and Leonila Ponder Creekmore united in marriage on February 16, 1994, in Maui, Hawaii, and divorced on March 9, 2001. The parties had one son, Charles, who was born in July 1994. The parties entered into a property settlement, child custody and child support agreement which the chancellor approved. The agreement stipulated that Leonila would have primary physical custody, subject to David's right to reasonable visitation, and the parties agreed to joint legal custody.
¶ 2. On February 8, 2002, David filed a motion seeking a modification of custody, relief from the prior child support arrangement, and payment of child support. Leonila filed a counterclaim for contempt and a modification of visitation. Due to allegations of abuse, the court appointed attorney Kiley Kirk as guardian ad litem, who *718 filed a written report and testified at trial. After a trial on the matter, the court found that David had failed to show a material change in circumstance to warrant a change in custody.
¶ 3. It is from this ruling that David now appeals, arguing the following points of error: (1) the chancellor abused his discretion in not finding a material change in circumstance which adversely affected Charles; (2) the chancellor should have applied the Albright factors after finding a material change in circumstance; and (3) the chancellor erred in not following the recommendation of the guardian ad litem.
¶ 4. Finding no error, we affirm.

STANDARD OF REVIEW
¶ 5. Our standard of review for child custody cases is as well-settled as it is limited. The chancellor must be manifestly wrong, clearly erroneous, or have applied the wrong legal standard for this Court to reverse. Williams v. Williams, 656 So.2d 325, 330 (Miss.1995).
I. DID THE CHANCELLOR ERR IN NOT FINDING A MATERIAL CHANGE IN CIRCUMSTANCE?
¶ 6. We first note Leonila's failure to file a brief in support of her position. "Failure of an appellee to file a brief is tantamount to confession of error and will be accepted as such unless the reviewing court can say with confidence, after considering the record and brief of appealing party, that there was no error." Dethlefs v. Beau Maison Development Corp., 458 So.2d 714, 717 (Miss.1984) (emphasis added). An appellee's failure to respond does not automatically entitle the appellant to prevail. N.E. v. L.H., 761 So.2d 956, 962(¶ 14) (Miss.Ct.App.2000).
¶ 7. In a proceeding to modify custody, the party seeking a modification must prove (1) a material change in circumstances which adversely affects the welfare of the child and (2) the child's best interests requires a change in custody. Robison v. Lanford, 841 So.2d 1119, 1124(¶ 16) (Miss.2003) (citing Brocato v. Brocato, 731 So.2d 1138, 1141(¶ 9) (Miss. 1999)). The change in circumstances "is one in the overall living conditions in which the child is found. The `totality of the circumstances' must be considered." Tucker v. Tucker, 453 So.2d 1294, 1297 (Miss.1984) (citing Kavanaugh v. Carraway, 435 So.2d 697, 700 (Miss.1983)).
¶ 8. The chancellor found that "there is just simply little evidence of any material change in circumstance of the custodial parent that would adversely affect the child." Prior to the divorce, Leonila worked as a waitress at Silver Star Casino, where she continues to work. Leonila works from 8 o'clock in the evening until 4 o'clock in the morning. Leonila and Charles have lived with David Creekmore since July 2002, and in January 2004, Leonila and Creekmore married. Leonila and Creekmore are expecting a child, and Leonila indicated that she married Creekmore to prevent David from using the relationship against her. Leonila's home includes two apartments which she rents to tenants.
¶ 9. David accused Leonila of abusing Charles and took him to the emergency room for treatment. As a result of these accusations, the Winston County Department of Human Services investigated and referred the matter to the Neshoba County Department of Human Services. The record does not indicate any further action by the Department. Charles has attended counseling sessions because he has had difficulty adjusting to the divorce and its aftermath. At trial Charles's counselor testified that he, too, had witnessed signs of abuse, and that when questioned about his bruises Charles indicated that Leonila *719 had "lost it again." The counselor further testified that prior to Leonila's marriage to Creekmore, Charles had difficulty understanding his place in the family. During a session, Charles told the therapist that he woke one morning and wanted breakfast, so he went to his mother's bedroom to ask for her help. There he found Leonila in bed with Creekmore, and Leonila told Charles to "go fix some cereal for hisself [sic]." The therapist testified that Charles has apparently adjusted to the marriage, as it provided a modicum of stability.
¶ 10. Leonila allows David liberal visitation with Charles, at Charles's request, to the extent that Charles spent a total of one hundred seventy-nine days with David during 2004. When Charles stays with David, David drives Charles the seventy-five miles into town to school. Charles is a bright boy and makes outstanding grades in school.
¶ 11. Prior to trial David hired Marvin Reynolds, a private investigator, who observed Leonila and Charles for ten days. During those ten days Reynolds observed a number of men and women entering and exiting Leonila's house in the early hours of the morning, as well as at night. Although Reynolds observed these individuals, there was no indication that these visitors belonged to David or Leonila as opposed to Leonila's tenants.
¶ 12. Kiley Kirk, Charles's guardian ad litem, made a written report, indicating that neither parent was above reproach. Kirk withheld his recommendation until after hearing the testimony at trial. Kirk's final recommendation was that, while neither parent was perfect, a custody modification would be appropriate.
¶ 13. In the summer of 2003, Leonila allowed Charles to stay with David. As the summer came to an end, David refused to tender him, and Leonila acquired a court order mandating Charles's return. The court also ordered David to post a bond in the amount of $3,000, as a preventative measure against similar behavior. David returned Charles and posted the bond as required.
¶ 14. This Court must respect the factual findings of a chancellor when those findings are supported by credible evidence and are not manifestly wrong. Rogers v. Morin, 791 So.2d 815, 826(¶ 39) (Miss.2001). "The chancellor, by his presence in the courtroom, is best equipped to listen to witnesses, observe their demeanor, and determine the credibility of the witnesses and what weight ought to be ascribed to the evidence given by those witnesses." Id. (quoting Carter v. Carter, 735 So.2d 1109, 1114 (Miss.Ct.App.1999)). Having heard the testimony of the witnesses, including the representative from the Department of Human Services, Charles's counselor, the private investigator, both parents and the guardian ad litem, the chancellor found that there was insufficient evidence regarding a material change in circumstance. Given our differential standard of review, we find no error, and, accordingly, affirm.
II. DID THE CHANCELLOR ERR IN FAILING TO APPLY THE ALBRIGHT FACTORS?
¶ 15. David argues that the chancellor should have weighed the factors presented in Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983). David argues that the chancellor's failure to find a material change in circumstance resulted in the chancellor's failure to undertake an Albright analysis as to whose custody would meet Charles's best interests. We have found no error in the chancellor's finding that no material change in circumstance had occurred; therefore, the chancellor did not err in failing to evaluate each parent *720 under Albright. This issue is without merit.
III. DID THE CHANCELLOR ERR IN NOT FOLLOWING THE RECOMMENDATION OF THE GUARDIAN AD LITEM?
¶ 16. In custody cases where allegations of abuse are at issue, the appointment of a guardian ad litem is not discretionary. Robison, 841 So.2d at 1126 (¶ 23). As there were allegations of abuse raised by the parties, the appointment of a guardian ad litem was appropriate. See Miss.Code Ann. § 93-5-23 (Rev.2004). Our supreme court has held that there is no requirement that a chancellor follow the recommendations of a guardian ad litem; however, if the appointment of a guardian ad litem is mandatory and the chancellor chooses to disregard his recommendation, the chancellor should include a summary of the guardian ad litem's qualifications and recommendations as well as his reasons for disregarding the recommendation in his findings of fact. S.N.C. v. J.R.D., Jr., 755 So.2d 1077, 1082 (¶¶ 17-18) (Miss. 2000).
¶ 17. Although the chancellor did not include a summary of the guardian ad litem's qualifications in his opinion, we do not agree that this, alone, is grounds for reversing the chancellor's decision. From his opinion and the judgment it is clear that the chancellor considered Kirk's testimony and his recommendation, yet still found that the evidence was insufficient to find a material change in circumstance. We find no abuse of discretion, and, under our deferential standard of review, we affirm.
¶ 18. THE JUDGMENT OF THE CHANCERY COURT OF WINSTON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., MYERS, P.J., SOUTHWICK, IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.