IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 31, 2018 Session

## KAREN GAYE THOMPSON BOUNDS v. KENNETH NEWTON BOUNDS

**Appeal from the Circuit Court for Bradley County**
**No. V-17-088     Lawrence Puckett, Judge**

_____

### No. E2017-02366-COA-R3-CV
_____

After ten years of marriage, Karen Gaye Thompson Bounds ("Wife") sued Kenneth Newton Bounds ("Husband") for divorce. After a trial, the Circuit Court for Bradley County ("the Trial Court"), *inter alia*, awarded the parties a divorce, divided the marital property and debts, held that the marital residence was Husband's separate property, awarded Wife alimony *in solido*, and awarded Wife attorney's fees. Husband appeals raising issues regarding the award of alimony and the award of attorney's fees. We find and hold that the Trial Court did not abuse its discretion with regard to the award of alimony or the award of attorney's fees. We, therefore, affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR. and JOHN W. MCCLARTY, JJ., joined.

H. Franklin Chancey, Cleveland, Tennessee, for the appellant, Kenneth Newton Bounds.

Jerry Hoffer, Cleveland, Tennessee, for the appellee, Karen Gaye Thompson Bounds.

## OPINION

### Background

Wife and Husband dated for almost two years before they were married in December of 2006. When the parties met, Wife was working as a secretary for a real estate company. By the time of the marriage, Wife was working as a receptionist and legal assistant at a law firm. Approximately six months into the marriage, Wife was laid off from her job through no fault of her own. Wife spent approximately two years

searching for a new job, but was unable to obtain one. She then stopped looking for employment. Husband was disabled at the time of the marriage and throughout the marriage and not employed. No children were born of the marriage. In February of 2017 Wife filed for divorce. The case proceeded to trial in October of 2017.

Wife testified at trial that she was 67 years old and in good health. She was not working and had not worked since she was laid off early in the marriage. Wife attended graduate school during the 1980s studying English, creative writing, and French literature. Wife agreed that Husband neither dissuaded her from trying to work during the marriage, nor insisted that she needed to work. Wife testified that when she was laid off she received a benefit that became an annuity. She receives $286 per month from that annuity and has about 17 years left on the annuity.

Wife testified that Husband was not employed when they married. He previously had worked for Norfolk Southern Railroad. Wife testified that Husband has psoriatic arthritis, a bad back, and is hard of hearing. During the marriage Husband had some major back surgery and developed some neuropathy in his extremities. Wife was asked if Husband was in pain during that time period, and she stated: "Very much so."

At the time of the marriage, Husband owned a house on Mouse Creek that was paid for. Husband sold this house and used the proceeds to purchase a house on Lower Woods Trail, which the parties used as the marital home. The purchase price of the marital home in 2007 was $333,000. Wife testified that the house is paid for. Wife's name was put on the deed of the marital residence when it was purchased in May of 2007, and the parties have lived there since the purchase. Wife testified that since moving in to the marital residence, the parties have installed hardwood floors and quartz counter tops and a backsplash.

Wife agreed that the marital home was paid for with Husband's premarital funds. Wife also agreed that Husband paid for the improvements made to the house during the marriage using his disability income as Wife was not working. Wife testified that they lived on Husband's disability income during the marriage. Wife purchased some decorations for the home, but agreed that she did not really make contributions to the improvements to the house because she did not have much money.

Wife testified that Husband was very controlling during the marriage. She stated:

He fussed about even where I would put stuff on the shelves, the dishes. Where I would shop, where I bought gas. He didn't like the way I folded his towels or the way I made his bed.

He did not like it when I played my piano. I tried to play in the morning because he didn't get up until the afternoon and he would complain that it woke him up. So if I played in the evening he would complain that it was too loud because he was always watching TV.

Wife received an inheritance of $15,000 in February of 2017. Wife has not spent that inheritance as she plans to use it in the future when she needs a new car. Husband also received an inheritance during the marriage, but Wife did not know how much he had received.

Wife testified that her main source of income is a railroad spousal annuity. Wife started receiving the railroad spousal annuity in 2012. At the time of trial, the railroad spousal annuity paid $922 per month, but Wife explained that it will be reduced to $645 after the divorce. Wife used the money she received from the railroad spousal annuity to pay off her car. Wife then took the remainder and saved it in her checking account. Wife had saved about $27,000 at the time of her deposition, which was taken several months prior to trial. These savings along with the inheritance she received added up to about $40,000 in assets that Wife had at the time of trial.

Wife moved into an apartment in March of 2017. She testified that she pays $984 per month in rent plus renter's insurance, water, sewage, and taxes. Wife testified that the parties have no credit card debt.

Husband testified that he was 72 years old at the time of trial. Husband explained that he became disabled in May of 1996 and had been receiving disability income for approximately ten years prior to the marriage. Husband receives railroad retirement disability and a pension. He also has some mutual funds. Husband's monthly income is approximately $3,900.

Husband testified that he has ulcerative colitis, diabetic neuropathy, psoriatic arthritis, osteoarthritis, and significant back problems. He also has eye pain that did not respond to cataract surgery, and he wears hearing aids. Husband underwent a "spinal fusion front and back." He uses a walker or two canes to get around. Husband testified that he is unable to do significant housework and has to pay people to assist him with household chores.

Husband testified that he made the decision to purchase the marital home several months after the marriage because the parties "were kind of tight with her furniture and what I had left," despite getting rid of some furniture. Husband testified that he paid a substantial down payment and listed his current home for sale. Because a bridge loan was necessary, Wife's name was put on the deed to the marital house. Husband's former

3

house sold a little less than three months after the purchase of the marital home, and Husband used the proceeds to pay off the bridge loan. Husband used some of the excess funds from the sale to purchase a piano for Wife, pay off Wife's car loan, and pay some other expenses. Husband testified that the marital home was paid for completely with his separate resources. Wife put no money into the marital home. During the year after the purchase of the marital home, the house depreciated in value approximately $80,000 due to the housing market and has not appreciated since that time.

Husband testified that at the time of the marriage he owned a house on Saddle Creek Drive, had a 401(k) account, and had some mutual funds. Husband testified that he sold some stock to buy the marital home and pay some expenses. Husband stated that he used $150,000 of his separate funds during the marriage "to get by." Husband admitted that during the marriage he probably called Wife a "stealing gold digger."

After trial, the Trial Court entered its Final Decree on November 20, 2017, *inter alia* granting the parties a divorce, dividing the marital property and debts, awarding Wife the $27,000 in railroad spousal annuity benefits that she had saved, holding that the marital residence was Husband's separate property, and awarding Wife alimony *in solido* in the amount of $100,000. Husband appeals to this Court.

## Discussion

Although not stated exactly as such, Husband raises two issues on appeal: 1) whether the Trial Court erred in awarding Wife alimony *in solido* in the amount of $100,000; and, 2) whether the Trial Court erred in awarding Wife her attorney's fees.

We first consider whether the Trial Court erred in awarding Wife alimony *in solido* in the amount of $100,000. Our Supreme Court has provided instruction with regard to the standard of review of an award of alimony stating:

> For well over a century, Tennessee law has recognized that trial courts should be accorded wide discretion in determining matters of spousal support. *See Robinson v. Robinson*, 26 Tenn. (7 Hum.) 440, 443 (1846) ("Upon a divorce . . . the wife is entitled to a fair portion of her husband's estate for her support, and the amount thus to be appropriated is a matter within the legal discretion of the chancellor. . . ."). This well-established principle still holds true today, with this Court repeatedly and recently observing that trial courts have broad discretion to determine whether spousal support is needed and, if so, the nature, amount, and duration of the award. *See, e.g., Bratton v. Bratton*, 136 S.W.3d 595, 605 (Tenn. 2004); *Burlew v. Burlew*, 40 S.W.3d 465, 470 (Tenn. 2001); *Crabtree v. Crabtree*,

16 S.W.3d 356, 360 (Tenn. 2000).

Equally well-established is the proposition that a trial court's decision regarding spousal support is factually driven and involves the careful balancing of many factors. *Kinard v. Kinard*, 986 S.W.2d 220, 235 (Tenn. Ct. App. 1998); *see also Burlew*, 40 S.W.3d at 470; *Robertson v. Robertson*, 76 S.W.3d 337, 340–41 (Tenn. 2002). As a result, "[a]ppellate courts are generally disinclined to second-guess a trial judge's spousal support decision." *Kinard*, 986 S.W.2d at 234. Rather, "[t]he role of an appellate court in reviewing an award of spousal support is to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable." *Broadbent v. Broadbent*, 211 S.W.3d 216, 220 (Tenn. 2006). Appellate courts decline to second-guess a trial court's decision absent an abuse of discretion. *Robertson*, 76 S.W.3d at 343. An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice. *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011); *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 335 (Tenn. 2010). This standard does not permit an appellate court to substitute its judgment for that of the trial court, but " 'reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives,' and thus 'envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal.' " *Henderson*, 318 S.W.3d at 335 (quoting *Lee Medical, Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010)). Consequently, when reviewing a discretionary decision by the trial court, such as an alimony determination, the appellate court should presume that the decision is correct and should review the evidence in the light most favorable to the decision. *Wright*, 337 S.W.3d at 176; *Henderson*, 318 S.W.3d at 335.

*Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105-06 (Tenn. 2011) (footnote omitted).

Our Supreme Court has given further guidance with regard to discretionary decisions stating:

The abuse of discretion standard of review envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal. *Beard v. Bd. of Prof'l Responsibility*, 288 S.W.3d 838, 860 (Tenn. 2009); *State ex rel. Jones v. Looper*, 86

S.W.3d 189, 193 (Tenn. Ct. App. 2000). It reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives. *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 708 (Tenn. Ct. App. 1999). Thus, it does not permit reviewing courts to second-guess the court below, *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999), or to substitute their discretion for the lower court's, *Henry v. Goins*, 104 S.W.3d 475, 479 (Tenn. 2003); *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998). The abuse of discretion standard of review does not, however, immunize a lower court's decision from any meaningful appellate scrutiny. *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 211 (Tenn. Ct. App. 2002).

Discretionary decisions must take the applicable law and the relevant facts into account. *Konvalinka v. Chattanooga–Hamilton County Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008); *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996). An abuse of discretion occurs when a court strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision. *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007). A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence. *State v. Ostein*, 293 S.W.3d 519, 526 (Tenn. 2009); *Konvalinka v. Chattanooga–Hamilton County Hosp. Auth.*, 249 S.W.3d at 358; *Doe 1 ex rel. Doe 1 v. Roman Catholic Diocese of Nashville*, 154 S.W.3d at 42.

To avoid result-oriented decisions or seemingly irreconcilable precedents, reviewing courts should review a lower court's discretionary decision to determine (1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the lower court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the lower court's decision was within the range of acceptable alternative dispositions. *Flautt & Mann v. Council of Memphis*, 285 S.W.3d 856, 872–73 (Tenn. Ct. App. 2008) (quoting *BIF, a Div. of Gen. Signal Controls, Inc. v. Service Constr. Co.*, No. 87–136–II, 1988 WL 72409, at *3 (Tenn. Ct. App. July 13, 1988) (No Tenn. R. App. P. 11 application filed)). When called upon to review a lower court's discretionary decision, the reviewing court should review the underlying factual findings using the preponderance of the evidence standard contained in Tenn. R. App. P. 13(d) and should review the lower

6

court's legal determinations de novo without any presumption of correctness. *Johnson v. Nissan N. Am., Inc.*, 146 S.W.3d 600, 604 (Tenn. Ct. App. 2004); *Boyd v. Comdata Network, Inc.*, 88 S.W.3d at 212.

*Lee Medical, Inc. v. Beecher*, 312 S.W.3d 515, 524–25 (Tenn. 2010).

With regard to the different types of awards of alimony, our Supreme Court explained in *Gonsewski v. Gonsewski*:

> Current Tennessee law recognizes several distinct types of spousal support, including (1) alimony in futuro, (2) alimony in solido, (3) rehabilitative alimony, and (4) transitional alimony. Tenn. Code Ann. § 36–5–121(d)(1).
>
> * * *
>
> The second type of support, alimony in solido, is also a form of long-term support. The total amount of alimony in solido is set on the date of the divorce decree and is either paid in a lump sum payment of cash or property, or paid in installments for a definite term. Tenn. Code Ann. § 36–5–121(h)(1); *Broadbent*, 211 S.W.3d at 222 ("Alimony *in solido* consists of a definite sum of money that is paid in a lump sum or in installments over a definite period of time."). "A typical purpose of such an award would be to adjust the distribution of the parties' marital property." *Burlew*, 40 S.W.3d at 471. Alimony in solido "may be awarded in lieu of or in addition to any other alimony award, in order to provide support, including attorney fees, where appropriate." Tenn. Code Ann. § 36–5–121(d)(5). Unlike alimony in futuro, the other form of long-term support, alimony in solido is considered a final judgment, "not modifiable, except by agreement of the parties," and does not terminate upon the death or remarriage of the recipient or payor spouse. Tenn. Code Ann. § 36–5–121(h)(2)–(3); *see Riggs*, 250 S.W.3d at 456 n. 3.
>
> * * *
>
> Finally, in determining whether to award spousal support and, if so, determining the nature, amount, length, and manner of payment, courts consider several factors:
>
> > (1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from

pension, profit sharing or retirement plans and all other sources;

(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;

(3) The duration of the marriage;

(4) The age and mental condition of each party;

(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7) The separate assets of each party, both real and personal, tangible and intangible;

(8) The provisions made with regard to the marital property, as defined in § 36–4–121;

(9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36–5–121(i). Although each of these factors must be considered when relevant to the parties' circumstances, "the two that are considered the most important are the disadvantaged spouse's need and the obligor spouse's ability to pay." *Riggs*, 250 S.W.3d at 457. *See also Bratton*, 136 S.W.3d at 605; *Robertson*, 76 S.W.3d at 342; *Burlew*, 40 S.W.3d at 470. Carefully adhering to the statutory framework for awarding spousal support, both in terms of awarding the correct type of support and for an appropriate amount and time, fulfills not only the statutory directives

8

but also alimony's fundamental purpose of eliminating spousal dependency where possible.

*Gonsewski*, 350 S.W.3d at 107-10 (footnote omitted).

In his brief on appeal, Husband argues that the Trial Court failed to "fully consider" the two most important factors in making its determination about alimony, *i.e.*, need and ability to pay. Husband argues that he "cannot pay the $100,000 alimony award without substantially jeopardizing his ability to continue to meet his future daily needs." He further asserts that the Trial Court failed to make a finding about Wife's contribution to the marriage. We disagree.

We begin, as we must as to this discretionary decision made by the Trial Court, by presuming that the Trial Court's decision to award Wife alimony *in solido* in the amount of $100,000 is correct and viewing the evidence in the light most favorable to the decision. The Trial Court found that Husband was leaving the marriage with approximately $952,028 in assets. Wife was leaving the marriage with approximately $42,000 in assets. The evidence in the record on appeal shows that Wife has a monthly deficit of approximately $1,221 and that Husband has a monthly excess of over $800. A careful and thorough review of the record on appeal shows that the Trial Court considered all of the relevant statutory factors when making its decision about alimony. The evidence in the record on appeal, as discussed more fully above, does not preponderate against the Trial Court's findings. As we find no abuse of discretion by the Trial Court, we will not second guess the Trial Court or substitute our judgment for that of the Trial Court.

Next, we consider whether the Trial Court erred in awarding Wife her attorney's fees. Our Supreme Court has instructed:

It is well-settled that an award of attorney's fees in a divorce case constitutes alimony in solido. *See* Tenn. Code Ann. § 36–5–121(h)(1) ("alimony in solido may include attorney fees, where appropriate"); *Herrera v. Herrera*, 944 S.W.2d 379, 390 (Tenn. Ct. App. 1996). The decision whether to award attorney's fees is within the sound discretion of the trial court. *Crabtree*, 16 S.W.3d at 361; *Kincaid v. Kincaid*, 912 S.W.2d 140, 144 (Tenn. Ct. App. 1995). As with any alimony award, in deciding whether to award attorney's fees as alimony in solido, the trial court should consider the factors enumerated in Tennessee Code Annotated section 36–5–121(i). A spouse with adequate property and income is not entitled to an award of alimony to pay attorney's fees and expenses. *Umstot v. Umstot*, 968 S.W.2d 819, 824 (Tenn. Ct. App. 1997). Such

awards are appropriate only when the spouse seeking them lacks sufficient funds to pay his or her own legal expenses, *see Houghland v. Houghland*, 844 S.W.2d 619, 623 (Tenn. Ct. App. 1992), or the spouse would be required to deplete his or her resources in order to pay them, *see Harwell v. Harwell*, 612 S.W.2d 182, 185 (Tenn. Ct. App. 1980). Thus, where the spouse seeking such an award has demonstrated that he or she is financially unable to procure counsel, and where the other spouse has the ability to pay, the court may properly grant an award of attorney's fees as alimony. *See id*. at 185.

*Gonsewski*, 350 S.W.3d at 113.

A careful and thorough review of the record on appeal reveals that the Trial Court considered all of the relevant statutory factors when makings its determination with regard to the award of attorney's fees. As discussed more fully above, the evidence in the record on appeal does not preponderate against the Trial Court's findings. We find no abuse of discretion in the Trial Court's decision to award attorney's fees to Wife, and we, therefore, will not second guess the Trial Court or substitute our judgment for that of the Trial Court.

## Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the appellant, Kenneth Newton Bounds, and his surety.

_____
D. MICHAEL SWINEY, CHIEF JUDGE

10