IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
June 23, 2020 Session

## IN RE CONSERVATORSHIP OF BETTY A. WINSTON

**Appeal from the Probate Court for Madison County**
**No. 19-17702          James F. Butler, Chancellor**

———————————————————

**No. W2019-01134-COA-R3-CV**

———————————————————

This appeal involves a conservatorship proceeding between two sisters with regard to their mother. The appealing sister argues that the trial court's order was deficient in several respects and that the trial court abused its discretion in naming the other sister as conservator, rather than a public guardian. Discerning no abuse of discretion, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Probate Court Affirmed**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which ARNOLD B. GOLDIN, and KENNY ARMSTRONG, JJ., joined.

Heather Lynn Staggs, Jackson, Tennessee, for the appellant, Andrea Lewin.

Alison Winston, Santa Anna, California, Pro se.

**OPINION**

**BACKGROUND**

This appeal involves the conservatorship of Betty A. Winston ("Mrs. Winston"), who was 86 years old when the matter began. Mrs. Winston's daughter, Petitioner/Appellee Alison Winston ("Appellee"), filed a Petition for Conservatorship in Madison County General Sessions Court ("the trial court") on February 7, 2019 seeking an appointment as Mrs. Winston's conservator.[1] Appellee alleged that Mrs. Winston was unable to properly care for herself and sought to be appointed as manager for her mother's healthcare and financial decisions.[2] Madison County General Sessions Court Judge Christy Little recused

---

[1] Madison County General Sessions Court has concurrent probate jurisdiction with the county's Chancery Court, according to Chapter 243 of the Private Acts of 1982.

[2] Although Appellee was represented by counsel during the bulk of the trial court proceedings, she is self-represented in this appeal.

herself from the matter, and Chancellor James F. Butler sat by interchange as the judge in the trial court. A guardian ad litem ("GAL") was appointed on February 25, 2019. Mrs. Winston's husband, Robert Winston, died on March 21, 2019.

Mrs. Winston's other daughter, Counter-Petitioner/Appellant Andrea Lewin ("Appellant"), filed a Motion to Intervene in the matter on April 24, 2019, and the trial court granted that motion on April 26, 2019. In a separate counter-petition, Appellant proposed that the Southwest Tennessee Development District ("Public Guardian"), serve as conservator for Mrs. Winston instead of Appellee. Both Appellant and her brother, Russell Winston ("Mr. Winston"),[3] live hours away from Mrs. Winston and were not willing to serve as conservator. Appellant alleged that her sister, Appellee, had abused her power as an attorney-in-fact for healthcare decisions and had committed elder abuse against Mrs. Winston. The Public Guardian provided a statement indicating its willingness to serve as conservator for Mrs. Winston. In a response, Appellee denied all claims of abuse and mismanagement of Mrs. Winston's healthcare decisions.

The GAL filed a report with the trial court on May 17, 2019. After conducting eleven interviews, reviewing court and police records, and examining Mrs. Winston's medical and financial records, the GAL recommended that the trial court appoint the Public Guardian as Mrs. Winston's conservator. According to the report, Mrs. Winston's medical condition deteriorated after suffering a stroke in May 2018. In the months following the stroke, Appellee came back from California to Tennessee to care for Mrs. Winston. Appellee was appointed Mrs. Winston's attorney-in-fact for health care decisions in August 2018.[4]

The report also recounted a January 2019 incident where Mrs. Winston fell and broke her hip in a store parking lot. While doctors recommended a hip replacement, Appellee initially refused to approve the surgery as Mrs. Winston's attorney-in-fact for healthcare decisions. Appellee later consented to the surgery, which occurred at least two days after Mrs. Winston's fall.[5]

The GAL's report further detailed the acrimony among Mrs. Winston's three children, including allegations of verbal, mental, and physical abuse, lawsuits concerning police reports and a false arrest, and accusations that the siblings were not acting for the benefit of Mrs. Winston. In interviews, medical professionals described Appellee's behavior as erratic and hostile and a hindrance to Mrs. Winston's quality of medical care. In addition, at the time of the report, Mrs. Winston's mortgage was in default, a separate

---

[3] Mr. Winston is not a party to this appeal.
[4] The validity of Mrs. Winston's Power of Attorney was under some dispute during the events leading up to the petition for conservatorship. The previous power of attorney assigned healthcare and financial decisions to Mr. Winston.
[5] At oral argument, Appellee stated that her desire to delay the surgery was because she wanted Mrs. Winston to undergo a heart test before the surgery.

unsecured loan was delinquent, and an additional credit card was over its limit.[6] In conclusion, the GAL stated that Mrs. Winston needed a conservator, but that Appellee was not capable of making independent decisions in Mrs. Winston's best interests.

The trial court conducted a hearing on the matter on May 21, 2019. Mrs. Winston did not appear at the hearing. While no party objected to the appointment of a conservator for Mrs. Winston, each of Mrs. Winston's children testified about who should serve as conservator. While Appellant and Mr. Winston argued that Appellee had not and would not properly care for Mrs. Winston, Appellee denied their accusations of abuse and stated that she was the only sibling who had stayed in Madison County, cared for her mother full-time, and was willing to serve as conservator. As detailed in the GAL report, considerable acrimony existed among the siblings over the care and control of Mrs. Winston and their late father. Additional friends and acquaintances testified to specific incidents that had occurred since Appellee returned to Jackson to care for her family. These incidents included shouting at neighbors who came to visit Mrs. Winston at the hospital and disconnecting of Mrs. Winston's phone line. Additional witnesses stated that Appellee had been closely involved in Mrs. Winston's care and had not physically or emotionally harmed Mrs. Winston. A deposition from a nursing home director was admitted as testimony, as well as voluminous medical records detailing Mrs. Winston's multiple hospital visits since 2018.

After hearing testimony and reviewing the medical records and GAL report, the trial court appointed Appellee as conservator of Mrs. Winston's person and property in a letter ruling issued on May 22, 2019. The trial court noted that Mrs. Winston would need around-the-clock care, that Appellee was willing to reside in Mrs. Winston's home and care for her, and that Mrs. Winston would have to move to a nursing home if the Public Guardian was appointed. While the trial court conceded that "[Ms.] Winston has a sharp manner about her," the trial court found that Appellee "is well educated, well in charge of the financial and medical issues surrounding her mother, and is an advocate for her to the point where she does not always accept the medical care that she is offered, and is not fearful of questioning how her mother's case is handled." In its ruling, the trial court stated:

> The Court has listened to all of the witnesses, and has judged everyone's credibility and motives in this case, and has come to the conclusion that the best interest of [Mrs. Winston] would be for Appellee to be appointed as the conservator for [Mrs. Winston], her person, and her property, and to have full rights, duties, and obligations of a conservator as set forth in the statute. In making such appointment, the Court is aware of the issues between the siblings but feels that under all of the circumstances, that it would be best for [Mrs. Winston] that she be able to reside in her own home where she is comfortable, and where she will have the full time care of a relative, who is

---

[6] At the time, Mr. Winston served as Mrs. Winston's attorney-in-fact for financial decisions.

able to handle her medical and financial issues.

The trial court also noted the report filed by the GAL, which recommended that the Public Guardian be appointed in this matter. Despite reaching a different result, the trial court stated that the GAL "did an excellent job in investigating the matter[.]" The trial court issued a separate order that detailed the scope of Appellee's conservatorship on May 31, 2019. Letters of conservatorship were issued the following month. Appellant timely filed a notice of appeal.

Following the filing of the notice of appeal, Appellee, now proceeding pro se, requested an amendment to the conservatorship. In particular, Appellee asked "that [her] siblings would assist [her] as soon as possible with the care of [her] Mrs. Winston." Appellant filed a response opposing Appellee's request and calling the court to remove her as conservator. Appellant also filed a motion for civil contempt against Appellee.[7]

## ISSUES PRESENTED

Appellant raises three separate, but related, issues in her brief. In our view, there is a single issue in this appeal: Whether the trial court erred in appointing Appellee as conservator under Tennessee Code Annotated section 34-3-103.

## STANDARD OF REVIEW

As this Court has previously explained,

"[A] petition for the appointment of a conservator requires the lower court to make legal, factual, and discretionary determinations[,]" each of which requires a different standard of review. *Crumley v. Perdue*, No. 01-A-01-9704-CH00168, 1997 WL 691532, at *2 (Tenn. Ct. App. Nov.7, 1997). On appeal, a trial court's factual findings are presumed to be correct, and we will not overturn those factual findings unless the evidence preponderates against them. Tenn. R. App. P. 13(d) (2008); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). For the evidence to preponderate against a trial court's finding

---

[7] Neither party asserts that these filings affect the finality of the conservatorship appointment or the subject matter jurisdiction of this Court. *See generally* Tenn. R. App. P. 4(e) (noting the timing and type of motions that toll the time for taking an appeal); *see also* **In re Estate of Rinehart**, 363 S.W.3d 186, 188 (Tenn. Ct. App. 2011) (holding that an order appointing a conservator was a final judgment); **Green v. Champs-Elysees, Inc.**, No. M2013-00232-COA-R3-CV, 2014 WL 644726, at *7 (Tenn. Ct. App. Feb. 18, 2014) (quoting **Poff v. Poff**, No. 01-A-01-9301-CV00024, 1993 WL 73897, at *2 (Tenn. Ct. App. Mar. 17, 1993) ("Contempt proceedings commenced after the entry of an otherwise final order in the underlying case should be viewed as independent proceedings.")); *cf.* **Dawson v. Dawson**, No. E2018-00990-COA-R3-CV, 2020 WL 1482451, at *8 (Tenn. Ct. App. Mar. 24, 2020) (noting that, generally, petitions to modify previous orders based on changed circumstances do not affect the finality of the prior order).

of fact, it must support another finding of fact with greater convincing effect. *Watson v. Watson*, 196 S.W.3d 695, 701 (Tenn. Ct. App. 2005) (citing *Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000); *The Realty Shop, Inc. v. RR Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999)). We review a trial court's conclusions of law under a de novo standard upon the record with no presumption of correctness. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993) (citing *Estate of Adkins v. White Consol. Indus., Inc.*, 788 S.W.2d 815, 817 (Tenn. Ct. App. 1989)). We review discretionary determinations under an abuse of discretion standard. *Crumley*, 1997 WL 691532, at *2. A trial court abuses its discretion when it has applied an incorrect legal standard or has reached a decision which is against logic or reasoning that caused an injustice to the party complaining. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001).

*In re Conservatorship of Todd*, No. E2009-02346-COA-R3-CV; 2010 WL 2350568, at *8 (Tenn. Ct. App. June 14, 2010); *see also In re Lawton*, 384 S.W.3d 754, 760–61 (Tenn. Ct. App. 2012) (adopting the same standard of review).

## DISCUSSION

A conservator is a "person or persons appointed by the court to provide partial or full supervision, protection and assistance of the person or property or both of a disabled person." Tenn. Code Ann. § 34-1-101(4). A person with a disability is considered "any person eighteen (18) years of age or older determined by the court to be in need of partial or full supervision, protection, and assistance by reason of mental illness, physical illness or injury, developmental disability, or other mental or physical incapacity." Tenn. Code Ann. § 34-1-101(13). A conservator is generally appointed by a court to protect the rights of a person with a disability by protecting the ward's person and managing and preserving his or her property. *In re Conservatorship of Davenport*, No. E2004-01505-COA-R3-CV, 2005 WL 3533299, at *7 (Tenn. Ct. App. Dec. 27, 2005) (citing 57 C.J.S. Mental Health § 110 (1992)). "Conservatorship proceedings provide a forum for determining whether a person's ability to remain autonomous has become impaired." *In re Conservatorship of Groves*, 109 S.W.3d 317, 329 (Tenn. Ct. App. 2003).

Before the court may appoint a conservator over the person or property of an individual, the petitioner must prove the following by clear and convincing evidence: (1) that the individual for whom the conservatorship is sought 'is fully or partially disabled,' and (2) that the individual for whom the conservatorship is sought 'is in need of assistance from the court.'" *Davenport*, 2005 WL 3533299, at *7 (quoting Tenn. Code Ann. § 24-1-126). Once the trial court determines that a conservator should be appointed, the trial court must then consider "what is in the best interests of the disabled person, and . . . based on the first determination, who is the appropriate conservator." *Crumley*, 1997 WL 691532,

at *3.

The appointment of a conservator is a decision left to the discretion of the trial court. *In re Conservatorship of Patton*, 2012 WL 7170481, at *8 (Tenn. Ct. App. Dec. 6, 2012) (citing *In re Rockwell*, 673 S.W.2d 512, 516 (Tenn. Ct. App. 1983)). Therefore, we review the trial court's decision to determine whether an abuse of discretion occurred. *In re Rockwell*, 673 S.W.2d at 516. "An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." *Bounds v. Bounds*, 578 S.W.3d 440, 446 (Tenn. Ct. App. 2018), perm. app. denied (Tenn. Jan. 18, 2019) (citing *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011); *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 335 (Tenn. 2010)). Under the abuse of discretion standard, a trial court's ruling will be upheld when reasonable minds could disagree about the validity of the decision. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001). The appellate court therefore cannot substitute its judgment for that of the trial court; instead, the standard "'reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives,' and thus 'envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal.'" *Henderson*, 318 S.W.3d at 335 (quoting *Lee Medical, Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010)).

Here, no party disputes that Mrs. Winston needs a conservator or claims that the trial court erred by concluding that a conservator was necessary. Indeed, Mrs. Winston told the GAL that she needed someone to care for her and manage her financial affairs. Instead, the dispute in this appeal concerns the sufficiency of the trial court's ruling and the decision as to who would serve as the conservator for Mrs. Winston.

## I.

As an initial matter, Appellant makes a general argument that the trial court's findings of fact and conclusions of law were deficient. We note, however, that the bulk of this argument was contained only in Appellant's reply brief. Generally, parties may not raise novel issues by way of reply brief. *See Hatfield v. Allenbrooke Nursing and Rehabilitation Center, LLC*, No. W2017-00957-COA-R3-CV, 2018 WL 3740565, at *8 (Tenn. Ct. App. Aug. 6, 2018) (citations omitted) ("It is well-settled, however, that appellants may not raise new issues in their reply briefs or use reply briefs to correct deficiencies in initial briefs."); *see also Caruthers v. State*, 814 S.W.2d 64, 69 (Tenn. Crim. App. 1991) ("An appellant cannot abandon an argument advanced in his brief and advance a new argument to support an issue in the reply brief."). Still, we have considered the sufficiency of the trial court's written order sua sponte in some cases. *See, e.g., Kirby v. Kirby*, No. M2015-01408-COA-R3-CV, 2016 WL 4045035, at *7 (Tenn. Ct. App. July 25, 2016) (vacating the trial court's judgment due to insufficient findings  of fact and conclusions of law despite the fact that neither party raised the sufficiency of the trial

court's compliance with Rule 52.01 as an issue on appeal); *In re Conservatorship for Ayers*, No. M2014-01522-COA-R3-CV, 2015 WL 3899406, at *4 (Tenn. Ct. App. June 24, 2015) (same); *In re Connor S.L.*, No. W2012-00587-COA-R3-JV, 2012 WL 5462839, at *5 (Tenn. Ct. App. Nov. 8, 2012) (same). As such, we will consider this issue.

Rule 52.01 of the Tennessee Rules of Civil Procedure provides that "[i]n all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment." "There is no bright-line test by which to assess the sufficiency of factual findings, but the findings of fact must include as much of the subsidiary facts as is necessary to disclose to the reviewing court the steps by which the trial court reached its ultimate conclusion on each factual issue." *Lovlace v. Copley*, 418 S.W.3d 1, 35 (Tenn. 2013) (internal quotation marks and citations omitted).

The trial court's order in this action spans more than three pages, single-spaced. The order recounts various episodes involving the care of Mrs. Winston and her now-deceased husband. The order does not, however, contain a detailed recitation of the testimony presented at trial. With regard to the testimony, the court noted the acrimony between the parties and the conflicting testimony, concluding that it was "neither productive, nor necessary, to recount all of the testimony since a court reporter was present and that transcript will be available if necessary." We agree with the trial court on this point. We have previously opined that "a lengthy summary of the testimony adduced at the hearing and a few credibility observations" without indicating which testimony or other evidence the trial court actually relied upon in making its decision is not sufficient to satisfy the requirement of making specific findings of fact. *In re S.S.-G.*, No. M2015-00055-COA-R3-PT, 2015 WL 7259499, at *12 (Tenn. Ct. App. Nov. 16, 2015). Thus, a detailed recitation of the testimony is of little value in the absence of a statement as to how the trial court came to its conclusions or how it linked its conclusion to the evidence.

While the trial court's order does not contain a recitation of the testimony from each witness, it does contain the required information concerning how the trial court reached its ultimate conclusion based upon the facts presented. According to the trial court, the most important facts at issue were the locations of the parties and whether Mrs. Winston would be able to remain in her home, rather than a nursing home. The trial court's order therefore provides sufficient findings of fact and conclusions of law to illuminate the steps the trial court took to reach its ultimate conclusion. Because the trial court's order is sufficient under Rule 52.01, this issue lacks merit.

In a similar vein, Appellant makes an additional, more narrow argument concerning the sufficiency of the trial court's order with regard to the GAL report. Specifically, Appellant argues that the trial court's ruling is flawed because the trial court's order does not reflect that it properly considered the GAL report submitted in this case. As previously discussed, the GAL filed a lengthy report in this case that ultimately recommended the

appointment of the Public Guardian due to the acrimony between the parties and the unsuitability of Appellee. The trial court made the following findings regarding the GAL report:

> The [GAL] filed his report in this case and did an excellent job in investigating the matter and pointing out things that were relevant to him, and in particular as it relates to [Appellee's] conduct with the medical providers. The [GAL] recommends that the public guardian be appointed as conservator for [Mrs. Winston]. He is aware of the acrimony concerning the siblings, and is aware that there may be a need to sell [Mrs. Winston's] house and property.

The trial court nevertheless appointed Appellee as Mrs. Winston's conservator, finding that it was

> aware of the issues between the siblings but feels that under all of the circumstances, that it would be best for Respondent that she be able to reside in her own home where she is comfortable, and where she will have the full time care of a relative, who is able to handle her medical and financial issues.

By Appellant's estimation, however, the trial court should be required to make more detailed findings when it departs from the recommendation of the GAL. In support, Appellant cites common law authority from outside our jurisdiction that requires trial courts to make detailed findings when rejecting the recommendations of the GAL. *See **In re L.D.M.***, 848 So.2d 181, 183 (Miss. 2003) (vacating a custody order when a trial court did not summarize a GAL's report and explain why the trial court agreed or disagreed with the report); ***Ponder v. Ponder***, 943 So.2d 716, 720 (Miss. Ct. App. 2006) ("[I]f the appointment of a GAL is mandatory and the chancellor chooses to disregard his recommendation, the chancellor should include a summary of the GAL's qualifications and recommendations as well as his reasons for disregarding the recommendation in his findings of fact.").[8] Appellant argues that other cases have reversed when the court placed "too much weight" on the GAL report that the parties were not privy to, *see **C.W. v. K.A.W.***, 2001 PA Super 90, 774 A.2d 745 (Pa. 2001), or when the trial court "totally fails to consider" the GAL report. *See **In re L.D.M.***, 848 So. 2d at 183.

Neither situation is present in this case. Here, the GAL filed his report with the trial court and it is contained in the record on appeal. Thus, the parties were privy to the contents of the report. Any authority concerning the trial court's "total[] fail[ure] to consider" a GAL report is inapposite to this case, as the trial court's order indicates that it did consider

---

[8] In ***Ponder***, however, the Mississippi Court of Appeals declined to find an abuse if discretion when the trial court did not summarize the GAL report, as the trial court's order was clear that the court nevertheless considered the report and recommendation. *Id.* at 720.

the GAL report. *Id.* Essentially, then, Appellant argues that the trial court did not give the report enough weight.

We cannot conclude that the trial court abused its discretion in this manner. Importantly, although GAL reports are typically required in conservatorship matters, *see* Tenn. Code Ann. § 34-1-107(a)(1)-(2) (noting exceptions), the trial court is the ultimate arbiter of the respondent's best interest. *See **In re Conservatorship For Allen***, No. E2010-01625-COA-R10-CV, 2010 WL 5549037, at \*7 (Tenn. Ct. App. Dec. 29, 2010) (citing ***In re Conservatorship of Groves***, 109 S.W.3d 317, 349 (Tenn. Ct. App. 2003)) (holding that the court has "the ultimate say of what is in the respondent's best interest"). "The GAL owes a duty to the court to impartially investigate the facts and make a report and recommendations to the court. The GAL serves as an agent of the court, and is not an advocate for the respondent or any other party." Tenn. Code Ann. § 34-1-107(d)(1). During a conservatorship proceeding, a GAL is required to investigate the physical and mental capacity of the respondent and file a report concerning the investigation to the trial court. Tenn. Code Ann. § 34-1-107(d)(3). A trial court is therefore not bound to follow the recommendations of the GAL report. Indeed, as Appellee points out in her own brief, a trial court may act inappropriately by delegating its decision-making power to a GAL. *See **C.W.***, 774 A.2d at 749 (holding that the court improperly delegated its judicial power to a non-judicial officer); ***Whitaker v. Whitaker***, 957 S.W.2d 834, 839 (Tenn. Ct. App. 1997) (holding that a divorce decree provision conditioning visitation on a petition being filed by the GAL was "an unlawful delegation of judicial authority to the guardian ad litem").

Moreover, Tennessee law already contains a mandate that the trial court adequately explain its rulings following bench trials. *See generally* Tenn. R. Civ. P. 52.01 (discussed in detail, *supra*). We discern no basis to impose additional burdens on the trial court other than those set forth by the Tennessee Supreme Court. As previously discussed, the trial court met its obligation under Rule 52.01 to provide this Court with an adequate basis for its decision in order to facilitate appellate review. The trial court's ruling also makes clear that the trial court considered but ultimately rejected the recommendation of the GAL. While we will consider whether the trial court abused its discretion as to this ultimate conclusion, we discern no abuse of discretion regarding the sufficiency of the trial court's order.

## II.

The primary dispute in this case concerns whether the trial court erred in appointing Appellee as Mrs. Winston's conservator, given her previous actions as caretaker and attorney-in-fact for healthcare purposes. Appellant makes two arguments in support of her position: (1) that the trial court erred in its application of Tennessee Code Annotated section 34-3-103; and (2) that the appointment of Appellee was not in Mrs. Winston's best interest.

We begin with Appellant's argument concerning Tennessee Code Annotated section 34-3-103. The statute provides that,

> Subject to the court's determination of what is in the best interests of the person with a disability, the court shall consider the following persons in the order listed for appointment of the conservator:
>
> > (1) The person or persons designated in a writing signed by the alleged person with a disability;
> > (2) The spouse of the person with a disability;
> > (3) Any child of the person with a disability;
> > (4) Closest relative or relatives of the person with a disability;
> > (5) A district public guardian as described by § 34-7-104; and
> > (6) Other person or persons.

Tenn. Code Ann. § 34-3-103. Appellant appears to argue that the trial court considered the prioritized list of possible conservators over the best interests of Mrs. Winston. In her brief, Appellant cites multiple cases where a public guardian or independent conservator were affirmed as conservators despite the existence of direct relatives who sought the conservatorship. *See, e.g., **In re Conservatorship of McQuinn***, E2013-02790-COA-R3-CV, 2015 WL 1517918, at *2 (Tenn. Ct. App. Mar. 30, 2015); ***In re Conservatorship of Patton***, No. M2011-01296-COA-R3-CV, 2012 WL 7170481, at *1 (Tenn. Ct. App. Dec. 6, 2012); ***In re Conservatorship of Davenport***, No. E2004-01505-COA-R3-CV, 2005 WL 3533299, at *5 (Tenn. Ct. App. Dec. 27, 2005).

Respectfully, this argument is without merit. Nothing in the trial court's order indicates that the trial court chose to appoint Appellee as conservator over the Public Guardian solely because of Appellee's priority under section 34-3-103. Rather, the trial court's order appears to compare the appointment of Appellee and the Public Guardian on a fairly level playing field. The best interest of Mrs. Winston, namely that she could remain in her home, was the deciding factor as to the appointment of the conservator, rather than any statutory hierarchy. Thus, Appellant's argument on this issue is simply not supported by the record.

Finally, we address the trial court's ultimate finding that it was in Mrs. Winston's best interest for Appellee to be appointed conservator. In particular, Appellant asserts that the trial court wrongly focused on *where* Mrs. Winston would reside, rather than on *who* would serve as conservator. In support, Appellant cites cases in which the appointment of a public guardian was affirmed on the basis that there was considerable acrimony among the parties. *See **In re Conservatorship of Davenport***, 2005 WL 3533299, at *5 (affirming the appointment of a public guardian, rather than a relative, in part because there were "family frictions"); ***In re Conservatorship of Childs***, No. M2008-02481-COA-R3-CV, 2011 WL 51740, at *2 (Tenn. Ct. App. Jan. 5, 2011) (indicating that the trial court had

appointed a public guardian due to "family strife").[9] Given that the disputes of the parties in this case could be described as something altogether more serious that mere "friction" or "strife," Appellant contends that Mrs. Winston would likewise be better served by the appointment of the Public Guardian, even though such an appointment would have resulted in Mrs. Winston being placed in a nursing home.

We agree that the question of who should serve as conservator is a necessary part of the appointment of a conservator. *In re Conservatorship of Todd*, 2010 WL 2350568, at *8 ("The best interest analysis not only includes the question of whether a conservator is needed, but it also includes the question of who should be appointed to serve in that role."). The best interest of the respondent, however, is not limited solely to an examination of the person who would serve as conservator, but must involve consideration of "all the relevant factors." *See Crumley*, 1997 WL 691532, at *3 ("In order to determine the best interests of a disabled person, the court must consider all the relevant facts."). In this case, where Mrs. Winston was to live was highly relevant. Appellant provides no reasonable dispute that, at the very least, reasonable minds could differ that remaining in the home that Mrs. Winston is accustomed to would be in her best interest. *See generally Oliva v. Oliva*, 113 S.W.3d 269, 276 (Mo. Ct. App. 2003) (holding that allowing a ward to remain at home was a less restrictive environment than a nursing home when the ward could receive effective care at home); *cf. Eberting v. Eberting*, No. E2010-02471-COA-R3-CV, 2012 WL 605512, at *20 (Tenn. Ct. App. Feb. 27, 2012) (noting that the trial court "as the fact finder, is not required to check his or her common sense at the door when considering evidence"); *see also Dattel Family Ltd. P'ship v. Wintz*, 250 S.W.3d 883, 892 (Tenn. Ct. App. 2007) (holding that this Court "is not required to check common sense at the courthouse door"). There is also no dispute that the appointment of the Public Guardian would result in Mrs. Winston's move to a nursing home. Thus, the question of who should serve as conservator was inextricably linked to the question of where Mrs. Winston would be able to reside post-appointment.

Appellant argues, however, that the trial court's finding that Appellee would keep Mother in her home was erroneous. According to Appellee, if the evidence does not support the finding that Appellee will keep Mrs. Winston in her home, it follows that her appointment on this basis was an abuse of discretion. As previously discussed, an abuse of discretion may be based on a clearly erroneous assessment of the evidence. *Bounds*, 578 S.W.3d at 446. In particular, Appellant points to Appellee's long-standing ties to California, new employment in Minnesota, and the GAL report, which noted concern that Appellee would not follow through on her promise to keep Mrs. Winston in her home.

Respectfully, we cannot agree. Although Appellee had significant ties to California, she testified at trial that she had recently accepted employment that would generally allow

---

[9] The initial appointment of the public guardian was not at issue in *In re Conservatorship of Childs*. *Id.* at *1.

her to work from home. Moreover, Appellee informed the GAL that her intent was to reside in Jackson so that Mrs. Winston could remain in her home. The GAL had some concern over Appellee's truthfulness, however, as Appellee stated that circumstances could change and inquired about moving her mother to California. Still, Appellee testified unequivocally that if appointed conservator she would be able to stay in Jackson to tend to Mrs. Winston. The trial court apparently credited this testimony in finding that Appellee would keep Mother in her home. The trial court, as the trier of fact, was in the best position to determine the credibility of Appellee's testimony. *See Gaskill v. Gaskill*, 936 S.W.2d 626, 633 (Tenn. Ct. App. 1996). Moreover, it appears that the parties understood that the choice between the Public Guardian and Appellee as conservator was the deciding factor in whether Mrs. Winston would be allowed to remain in her home or be moved to a nursing home.[10] And Appellant filed no motion with this Court to consider facts occurring after the hearing in the trial court that undermine Appellant's commitment to staying in Jackson. *See* Tenn. R. App. P. 14 (outlining the procedure for motions to consider post-judgment facts).[11] Absent such a filing, we are not permitted to consider facts that were not presented to the trial court or contained in the appellate record. *See* Tenn. R. App. P. 13 (noting that this Court "may consider those facts established by the evidence in the trial court and set forth in the record and any additional facts that may be judicially noticed or are considered pursuant to rule 14"); *see also In re Kaycee M.*, No. M2017-02160-COA-R3-PT, 2018 WL 4778018, at *8 n.9 (Tenn. Ct. App. Oct. 3, 2018) ("[W]e decide cases based upon the record in the trial court, absent a properly filed motion requesting consideration of post-judgment facts."). As such, we cannot conclude that the trial court made a clearly erroneous assessment of the evidence presented to it in concluding that Mrs. Winston's best interests would be served by remaining in her home and that the appointment of Appellee was the best chance for Mrs. Winston to do so.

We agree with Appellant that there was considerable evidence of acrimony and poor conduct on the part of Appellee. In many cases, acrimony between relatives may support the appointment of an independent guardian. *See, e.g., In re Conservatorship of Davenport*, 2005 WL 3533299, at *5. Much of the evidence of bad conduct, however, was

---

[10] For example, Mr. Winston testified that the dispute was "either home or a nursing home." Mr. Winston further admitted that the only way for Mrs. Winston to stay home was for someone to stay with her. Appellee was the only party that testified to a willingness to do this. Thus, although Appellee's initial conservatorship petition mentioned a plan to place Mrs. Winston in a nursing home, it appears that her position changed during the course of the proceedings in the trial court.

[11] Such a change in circumstances, if proven, could possibly warrant modification of the conservatorship under Tennessee Code Annotated section 34-3-108 (allowing modification if, inter alia, "the conservator has failed to act in the best interest of the person with a disability so as to warrant modification or termination"). It does appear that Appellant has requested modification of the conservatorship in the trial court. That request, however, is not at issue in this appeal. Moreover, Appellant's allegations contained therein are merely that—allegations—and cannot be considered by this Court in this appeal. *See Simpson v. Simpson*, No. E2018-01686-COA-R3-CV, 2019 WL 2157937, at *8 (Tenn. Ct. App. May 17, 2019) (citing *Reid v. Reid*, 388 S.W.3d 292, 295 (Tenn. Ct. App. 2012)) ("The allegations in their complaint are not evidence in the absence of an answer admitting the allegation.")

- 12 -

sharply disputed by Appellee, and there is no dispute that the appointment of a public guardian would necessarily result in Mrs. Winston being removed from her home to a nursing home. Moreover, the trial court's ruling indicates that it considered other relevant factors, including the fact that Appellee is "well educated, well in charge of the financial and medical issues surrounding her mother, and is an advocate for her to the point where she does not always accept the medical care that she is offered, and is not fearful of questioning how her [m]other's care is handled." While Appellant may disagree with the trial court's assessment of Appellee's qualifications, nothing in her brief demonstrates that these findings are clearly erroneous or otherwise an abuse of the trial court's discretion.

A move to a nursing home may ultimately result in this case. However, the trial court ruled that it was in Mrs. Winston's best interest that Appellee be named as conservator because she testified that she was willing to remain in Jackson to tend to Mrs. Winston on a daily basis and she was already "well in charge" of Mrs. Winston's medical and financial decisions. The question in this case is not what conclusion we would reach if presented with the same proof. Rather, because this case involves a "choice . . . among several acceptable alternatives," the trial court's judgment is reviewed only for an abuse of discretion. *Roberts v. McNeill*, No. W2013-01072-COA-R3-CV, 2014 WL 2475595, at \*7 (Tenn. Ct. App. May 30, 2014) (citing *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010)). In other words,

> The abuse of discretion standard does not require a trial court to render an ideal order . . . to withstand reversal. Reversal should not result simply because the appellate court found a "better" resolution. An abuse of discretion can be found only when the trial court's ruling falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record.

*Eldridge*, 42 S.W.3d at 88. As a result, Tennessee courts have affirmed trial courts' rulings under this standard even when recognizing that the appellate court would have reached a different result based on the evidence. *See, e.g., Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 188 (Tenn. 2011) ("In final analysis, given that the effective hourly rate of [the attorney's] fee award is so high, we almost certainly would have awarded a lesser amount if we were reviewing [the attorney's] fee request de novo."). Based on the record on appeal, we cannot conclude that the trial court's decision was an unacceptable choice given the alternatives presented to it so as to constitute an abuse of the trial court's broad discretion. The trial court's decision to appoint Appellee as conservator is therefore affirmed.

## CONCLUSION

The judgment of the Madison County Probate Court is affirmed, and this cause is remanded to the trial court for all further proceedings as are necessary and consistent with

this Opinion. Costs of this appeal are taxed to Counter-Petitioner/Appellant Andrea Lewin, for which execution may issue if necessary.

s/ J. Steven Stafford
J. STEVEN STAFFORD, JUDGE
