IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 16, 2021 Session

## AHMED MOTE ALZAMZAMI v. ARWA AL-SULAIHI

**Appeal from the Circuit Court for Shelby County**
**No. CT-000834-18  Rhynette N. Hurd, Judge**

_____

**No. W2020-01467-COA-R3-CV**

_____

This is an appeal of a divorce involving children, which includes issues of default judgment, jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act, the statute of frauds, and attorney's fees. The trial court granted a motion for default judgment against the husband only as to the wife's counter-complaint for divorce and subsequently denied the motion to set aside the default judgment. Thereafter, the trial court entered a final decree of divorce holding that the wife was entitled to a divorce on the grounds of inappropriate marital conduct and dismissed the husband's complaint for divorce. The trial court divided the marital estate and adopted a permanent parenting plan. Additionally, the trial court awarded a judgment against the husband in the amount of $15,000.00 for the wife's attorney's fees and litigation expenses incurred. The husband appeals. We affirm in part, vacate in part, and remand for further proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Vacated in Part, and Remanded**

CARMA DENNIS MCGEE, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and KENNY W. ARMSTRONG, J., joined.

Samuel J. Muldavin and Daniel J. Mickiewicz, Memphis, Tennessee, for the appellant, Ahmed Mote Alzamzami.

Melissa C. Berry and Michelle S. Crawford, Memphis, Tennessee, for the appellee, Arwa Al-Sulaihi.

**MEMORANDUM OPINION**[1]

_____

[1] Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

# I. FACTS & PROCEDURAL HISTORY

Mr. Ahmed Mote Alzamzami ("Husband") and Ms. Arwa Al-Sulaihi ("Wife") married in Yemen in February 2004. Husband had resided in the United States since he was eight years old, but Wife continued to reside in Yemen even after their marriage. During their marriage, Husband and Wife had a daughter in December 2004 and a son in November 2007, who both resided in Yemen with Wife. Husband had business pursuits in the United States and traveled between the two countries periodically until 2013. Wife did not communicate with Husband at all from 2013 through 2017, but Husband occasionally would send money to Wife. In an effort to relocate to the United States and escape the war in Yemen, Wife and the children left Yemen and temporarily went to Egypt because of visa issues.

On November 3, 2017, Wife and the children came to the United States after her brother paid for their relocation. Wife and the children resided with Wife's brother in Delaware for a short time until Husband moved them to Memphis, Tennessee. Husband paid for an apartment for Wife and the children, Husband took the children to the doctor to get their shots, and the children were enrolled in school in January 2018. However, Husband did not provide food, would not allow Wife to take English classes,[2] would not teach Wife how to drive, and would not allow Wife to go to the hospital. Wife also discovered that Husband had been unfaithful and had a child with another woman. Husband also allegedly abused Wife and the children physically, emotionally, and psychologically during their time in Memphis. According to Wife and the daughter, Husband spit in the daughter's mouth because she would not eat a certain food. On February 14, 2018, just three months after arriving in the United States, Wife and the children moved to Michigan after Husband brandished a gun, threatened her and the children, and Wife's brother called the police.

On February 26, 2018, Husband filed a complaint for divorce, petition to oppose parental relocation, and petition to declare himself the primary residential parent. Wife filed an answer and counter-complaint for divorce on June 26, 2018. Wife specifically requested that the trial court "fairly and equitably divide between the parties all right, title, and interest in the parties' property and make a determination as to all separate and marital property belonging to the parties." Wife also requested she "be granted such other further specific and general relief to which she is entitled." On June 28, 2018, the trial court

---

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

[2] Because Wife did not speak English, the trial court appointed a foreign language interpreter to assist with translation throughout this case.

entered an order requiring Husband to provide Wife with the social security cards, birth certificates, passports, and green cards for Wife and the children. The trial court also enjoined Wife from taking the children out of the United States and ordered that Husband was not allowed parenting time with the children until the matter could be heard. In October 2018, Wife filed a motion to compel stating that Husband had provided the children's social security cards and passports, but had failed to provide any of the remaining documents.

After a hearing, the trial court entered an order on October 31, 2018, on the petition to oppose parental relocation, petition to declare Husband the primary residential parent, and motion to compel. The trial court determined that it had jurisdiction over the primary residential parent petition under the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA") and concluded that Wife should be designated as the primary residential parent. Specifically, the trial court stated that "the State of Tennessee is the children's home state as the children resided in Tennessee from November of 2017 until February of 2018, so were residing in Tennessee within six months prior to the filing of the Primary Residential Parent Petition, and one parent resides in Tennessee." The trial court ordered that the children should remain in Michigan with Wife. The trial court granted Husband parenting time and ordered him to pay retroactive child support. Both Husband and Wife were ordered to attend parenting classes. Additionally, the trial court granted Wife's motion to compel ordering Husband to immediately provide the social security cards, birth certificates, passports, and green cards for Wife and the children or immediately provide Wife $2,000.00 in order for her to obtain the documentation.

On December 14, 2018, the trial court entered a consent order on child support ordering Husband to pay Wife $449.00 per month in child support. Afterward, Husband moved to Delaware on or about February 28, 2019. On July 3, 2019, Wife filed a motion for wage assignment and to set arrears stating that Husband had only made two monthly payments toward child support. Therefore, Wife requested that an income withholding order be entered requiring the child support to be paid to her via wage assignment. Additionally, Wife requested that the arrears be calculated back to February 2018 and that Husband be required to pay those arrears via wage assignment at a rate of $100.00 per month. On August 5, 2019, the trial court entered an order granting the motion for wage assignment and to set arrears. In December 2019, Wife filed a complaint for divorce in Michigan. However, the complaint was dismissed in February 2020 because Husband could not be located for service of process.

On April 17, 2020, Wife's current counsel filed a notice of appearance. On April 24, 2020, Wife filed a motion for default judgment for Husband's failure to answer her counter-complaint for divorce. On May 5, 2020, Husband's former counsel filed a motion to withdraw stating that Husband had been "uncooperative." On May 21, 2020, the trial court entered an order granting Wife's motion for default judgment as to her counter-complaint for divorce. On May 26, 2020, the court also entered an order granting the

motion to withdraw filed by Husband's attorney. On June 12, 2020, Husband's current counsel filed a notice of appearance. Husband then filed an answer to Wife's counter-complaint for divorce on June 15, 2020.

On July 7, 2020, Husband filed a motion to set aside the default judgment based upon good cause shown pursuant to Tennessee Rule of Civil Procedure 55.02; excusable neglect pursuant to Tennessee Rule of Civil Procedure 60.02(1); and in the interests of justice pursuant to Tennessee Rule of Civil Procedure 60.02(5). On August 28, 2020, Husband also filed a motion to dismiss or, in the alternative, relinquish jurisdiction of the children to the State of Michigan. On September 16, 2020, the trial court entered an order denying the motion to set aside the default judgment. The trial court found that Husband had ample time to file his answer to Wife's counter-complaint while represented by his former counsel and failed to do so. The trial court also found that Husband retained his current counsel prior to the default judgment becoming a "Final Order" and yet failed to timely file his motion to set aside the default judgment or a motion pursuant to Tennessee Rule Civil Procedure 59. On September 17, 2020, Wife filed a response to Husband's motion to dismiss or, in the alternative, relinquish jurisdiction of the children to the State of Michigan. Wife argued that she had obtained a default judgment and Husband did not have the right to defend against any claims in the counter-complaint, including jurisdiction.

On September 23, 2020, the trial court held a final hearing. Following this hearing, the trial court entered a final decree of divorce and permanent parenting plan on September 30, 2020. The trial court found that Wife was entitled to a divorce on the grounds of inappropriate marital conduct and dismissed Husband's complaint for divorce. Among other things, the trial court also found the following: the proposed permanent parenting plan filed by Wife was in the best interest of the children; Wife currently held the deed to real property in Yemen owned by Husband as collateral for a $20,000.00 loan he obtained from her; and Husband must pay the sum of $500.00 per month to Wife to satisfy his obligation to pay back the loan. In the event Husband did not satisfy this obligation and the arrearage owed to Wife by October 1, 2024, Wife would be awarded the real property and permitted to sell it to satisfy Husband's obligations. Additionally, the trial court awarded a judgment against Husband for $15,000.00 for Wife's attorney's fees and litigation expenses incurred. The trial court based its award of attorney's fees on affidavits filed after the hearing by both Wife's former and current counsel.

On October 26, 2020, Husband filed his appeal. Husband later filed a notice of no transcript on December 2, 2020. On January 6, 2021, the trial court entered an order denying Husband's motion to dismiss or, in the alternative, relinquish jurisdiction of the children to the State of Michigan. The trial court found that: (1) it had subject matter jurisdiction over this matter; (2) it had personal jurisdiction over the parties; (3) the home state of the children was Tennessee at the time the complaint was filed in this matter, and Tennessee had continuing, exclusive jurisdiction over the custody of the children until it relinquishes same; (4) there were no other actions pending to which it could transfer

jurisdiction over custody of the children; and (5) it had heard substantial proof regarding the best interest of the minor children.

Husband filed his proposed Statement of the Evidence on January 14, 2021.[3] On February 5, 2021, Husband filed a motion to supplement the record regarding his statement of the evidence. Wife responded to the motion, filed objections to Husband's statement of the evidence, and submitted her own statement of the evidence. Husband then filed initial and supplemental objections to Wife's statement of the evidence.

On March 16, 2021, the trial court entered an order finding that "Husband's Motion to Supplement the Record is granted and a Statement of the Evidence will be included in the record on appeal." However, the trial court found that Husband's statement of the evidence was "an account of part of the procedural history," but was "not a statement of the evidence as contemplated by Tennessee Rule of Appellate Procedure 24," and "should not be considered an account of the evidence in the case."[4] Conversely, the trial court found that Wife's statement of the evidence and proceedings should be considered in the record on appeal. Therefore, the trial court adopted and approved Wife's statement of the evidence and proceedings with additions made by the court.

## II. ISSUES PRESENTED

Husband presents the following issues for review on appeal, which we have slightly restated:

1. Whether the trial court erred by not setting aside the default judgment entered in this case;
2. Whether the trial court erred in retaining jurisdiction under the UCCJEA;
3. Whether the trial court erred when it granted relief on a default judgment outside the pleadings and request for relief;
4. Whether the judgment for $20,000.00, granted to Wife for an alleged loan made to Husband, violated the statute of frauds as no paper writing was entered into evidence by Wife; and
5. Whether the trial court erred in granting attorney's fees in the amount of $15,000.00 to Wife when no findings were made as to ability to pay or need of Wife.

---

[3] On January 25, 2021, Husband filed a motion with this Court requesting that we accept the late-filing of his Statement of the Evidence. We granted Husband an extension to file a statement of the evidence in so far as it would allow the January 14, 2021 filing of a statement of evidence with the trial court. We then remanded the matter to the trial court for the limited purpose of determining the proper contents of the record and directed Husband to promptly file a motion to supplement the record with the trial court to address the proposed Statement of the Evidence.

[4] The trial court also stated that "prior to the Motion hearing, the Circuit Court Clerk's Office apparently tendered Husband's Statement of Evidence to the Court of Appeals by way of supplementing the record."

For the following reasons, we affirm in part, vacate in part, and remand for further proceedings consistent with this opinion.

## III.    STANDARD OF REVIEW

In non-jury cases, we review the trial court's findings of fact de novo upon the record, accompanied by a presumption of correctness of the findings, unless they are contrary to the preponderance of the evidence. *Ellis v. Ellis*, 621 S.W.3d 700, 704 (Tenn. Ct. App. 2019); *see* Tenn. R. App. P. 13(d); *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013). "We review the trial court's resolution of questions of law de novo with no presumption of correctness." *Ellis*, 621 S.W.3d at 704-05; *see Armbrister*, 414 S.W.3d at 692.

## IV.    DISCUSSION

### A.  Default Judgment

Husband's first issue is whether the trial court erred by not setting aside the default judgment entered in this case. Wife filed her counter-complaint for divorce on June 26, 2018. Nearly two years later, on April 24, 2020, Wife filed a motion for default judgment for Husband's failure to answer her counter-complaint. On May 21, 2020, the trial court entered an order granting Wife's motion. On July 7, 2020, Husband filed a motion to set aside the default judgment based on alleged good cause shown pursuant to Tennessee Rule of Civil Procedure 55.02; excusable neglect pursuant to Tennessee Rule of Civil Procedure 60.02(1); and in the interests of justice pursuant to Tennessee Rule of Civil Procedure 60.02(5). On September 16, 2020, the trial court entered an order denying Husband's motion, specifically finding that Husband had ample time to file his answer to Wife's counter-complaint while represented by his former counsel but failed to do so. The trial court also found that Husband retained his current counsel prior to the default judgment becoming a "Final Order" and yet failed to timely file his motion to set aside the default judgment or a motion pursuant to Tennessee Rule of Civil Procedure 59.

### i.    Tennessee Rule of Civil Procedure 54

We first consider the proper rule to be used in this case. The Tennessee Supreme Court has thoroughly explained each rule available to a party seeking relief from a previous trial court decision and the stage of the proceedings at which each rule applies. *See Discover Bank v. Morgan*, 363 S.W.3d 479, 488-489 (Tenn. 2012) (explaining the difference between Tennessee Rules of Civil Procedure 54, 59, and 60). "[M]otions seeking relief from a trial court's decision adjudicating fewer than all the claims, rights, and liabilities of all the parties, should be filed pursuant to Rule 54.02." *Id.* at 488. Rule 54.02(1) provides in pertinent part that

- 6 -

> [A]ny order or other form of decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of the judgment adjudicating all the claims and the rights and liabilities of all the parties.

Tenn. R. Civ. P. 54.02(1). Because the trial court only granted default judgment as to Wife's counter-complaint, and fewer than all the claims had been adjudicated, we conclude that in this case Tennessee Rule of Civil Procedure 54 applies. Therefore, Husband's motion seeking to set aside the trial court's order of default judgment should have been premised on and evaluated pursuant to Rule 54.02. *See Discover Bank*, 363 S.W.3d at 489-90 (applying Rule 54.02 because the order of default judgment did not adjudicate all of the claims, rights, and liabilities of all the parties).

### ii.     Test for Relief

Regardless of which rule applies, the Tennessee Supreme Court has determined that the test for relief is the same pursuant to both Rule 54.02 and Rule 60.02. *See id.* at 490-94 (holding that the trial court did not abuse its discretion by applying an incorrect legal standard because the same test for relief applies to Rule 54.02 and Rule 60.02). Tennessee has adopted the following criteria to be considered: "(1) whether the default was willful; (2) whether the defendant has a meritorious defense; and (3) the level of prejudice that may occur to the non-defaulting party if relief is granted." *Id.* at 491 (citing *Tenn. Dep't of Human Servs. v. Barbee*, 689 S.W.2 863, 866 (Tenn. 1985)). The Tennessee Supreme Court has also clarified that "willfulness" in the first factor of this test is a threshold inquiry. *Id.* at 492-94. As such, "whether pursuant to Rule 54.02 (for interlocutory judgments), Rule 59.04 (for final judgments within thirty days of entry), or Rule 60.02 (for final judgments more than thirty days after entry), a reviewing court must first determine whether the conduct precipitating the default was willful." *Id.* at 494. Willful conduct includes "deliberate choices" and "conduct that is flagrant and unexplained." *Id.* at 493 (quoting *Hayes v. Hayes*, No. M2006-02356-COA-R3-CV, 2007 WL 2580026, at *2 (Tenn. Ct. App. Sept. 6, 2007); *Barber & McMurry, Inc. v. Top-Flite Dev. Corp.*, 720 S.W.2d 469, 471 (Tenn. Ct. App. 1986) (counsel chose not to attend trial due to scheduling conflict)); *see also McBride v. Webb*, No. M2006-01631-COA-R3-CV, 2007 WL 2790681, at *3 (Tenn. Ct. App. Sept. 25, 2007) ("[Defendant] read the summons and did nothing to respond to the Complaint as directed by the summons. This is willful conduct."). In *Discover Bank*, the Tennessee Supreme Court discussed an example of a case demonstrating willful conduct, wherein "on no less than 'ten occasions counsel for the defendant was served with ample warning that if his client intended to further defend plaintiff's suit that action in that regard must be taken.'" *Discover Bank*, 363 S.W.3d at 493 (citing *Munday v. Brown*, 617 S.W.2d 897 (Tenn. Ct. App. 1981)). Once the determination of whether the default was willful is made, there are two different outcomes:

If the court finds that the defaulting party has acted willfully, the judgment cannot be set aside on "excusable neglect" grounds, and the court need not consider the other factors. If the conduct was not willful, however, then the court must consider whether the defaulting party has a meritorious defense and whether the non-defaulting party would be prejudiced by the granting of relief. The court may also consider any other factor that it deems relevant.

*Id.* at 494. Accordingly, we analyze whether Husband's default was willful in this case.

Wife filed her counter-complaint on June 26, 2018. Husband failed to file an answer in the nearly two years that had passed before Wife filed her motion for default judgment on April 24, 2020. During this time, the parties actively participated in the litigation, with multiple orders being entered by the court which addressed various issues. In its order denying the motion to set aside the default judgment, the trial court found that Husband had ample time to file his answer to the counter-complaint and yet failed to do so. Finding no explanation in the record for this "flagrant and unexplained" violation, other than the inaction of Husband's former counsel despite ample time to file an answer, we conclude this conduct was willful. *Id.* at 493 (quoting *Hayes*, 2007 WL 2580026, at *2). Therefore, having found that Husband's conduct was willful, he is not eligible for any relief on the grounds of "excusable neglect" or in the interests of justice pursuant to Tennessee Rule of Civil Procedure 60.02.

## B. UCCJEA

Husband's second issue is whether the trial court erred in retaining jurisdiction under the UCCJEA. This is a question of law subject to de novo review with no presumption of correctness. *Ellis*, 621 S.W.3d at 704-05; *see Armbrister*, 414 S.W.3d at 692. On August 28, 2020, Husband filed a motion to dismiss or, in the alternative, relinquish jurisdiction of the children to the State of Michigan. On January 6, 2021, the trial court entered an order denying that motion. The trial court found that: (1) it had subject matter jurisdiction over this matter; (2) it had personal jurisdiction over the parties; (3) the home state of the children was Tennessee at the time the complaint was filed in this matter, and Tennessee had continuing, exclusive jurisdiction over the custody of the children until it relinquishes same; (4) there were no other actions pending to which it could transfer jurisdiction over custody of the children; and (5) it had heard substantial proof regarding the best interest of the minor children. Husband argues that the trial court erred in accepting and continuing to exercise jurisdiction over custody and other issues involving the children after all parties and the children had moved from the State of Tennessee.

### i. *Accepting Jurisdiction*

In order to analyze this issue, we must first determine whether the trial court initially properly exercised jurisdiction over these children. Tennessee Code Annotated section 36-

6-216 confers jurisdiction on the Tennessee courts as follows:

> (a) Except as otherwise provided in § 36-6-219, a court of this state has jurisdiction to make an initial custody determination only if:
>
> (1) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six (6) months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;
>
> (2) A court of another state does not have jurisdiction under subdivision (a)(1), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under § 36-6-221 or § 36-6-222, and:
>
>> (A) The child and the child's parents, or the child and at least one (1) parent or person acting as a parent, have a significant connection with this state other than mere physical presence; and
>>
>> (B) Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships;
>
> (3) All courts having jurisdiction under subdivision (a)(1) or (a)(2) have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under § 36-6-221 or § 36-6-222; or
>
> (4) No court of any other state would have jurisdiction under the criteria specified in subdivision (a)(1), (a)(2), or (a)(3).
>
> (b) Subsection (a) is the exclusive jurisdictional basis for making a child-custody determination by a court of this state.
>
> (c) Physical presence of, or personal jurisdiction over, a party or a child is not necessary or sufficient to make a child-custody determination.

Tenn. Code Ann. § 36-6-216. Because "home state jurisdiction is given priority over all other types of jurisdiction" in this statute, we first determine whether Tennessee was the home state of the children as defined by Tennessee Code Annotated section 36-6-205(7). *Doss v. Doss*, No. E2004-00759-COA-R10-CV, 2005 WL 946744, at *5 (Tenn. Ct. App. Apr. 25, 2005). That statute defines "home state" as follows: "[T]he state in which a child lived with a parent or a person acting as a parent for at least six (6) consecutive months immediately before the commencement of a child custody proceeding." Tenn. Code Ann.

§ 36-6-205(7).

We begin our analysis with the six-month period prior to the commencement of this suit. The six-month period immediately before the commencement of this proceeding began on August 26, 2017. At that time, Wife and the children lived in Yemen. After a brief excursion through Egypt, they arrived in the United States on November 3, 2017. Wife and the children lived in Delaware for no more than a few days, moved to Tennessee for about three months, then lived in Michigan for approximately ten days before the commencement of this proceeding on February 26, 2018. On June 28, 2018, the trial court entered an order enjoining Wife from taking the children out of the United States and stating that Husband was not allowed parenting time with the children until the matter could be heard. On October 31, 2018, the trial court determined that it had jurisdiction over the primary residential parent petition under the UCCJEA and concluded that Wife should be designated as the primary residential parent. Specifically, the trial court stated that "the State of Tennessee is the children's home state as the children resided in Tennessee from November of 2017 until February of 2018, so were residing in Tennessee within six months prior to the filing of the Primary Residential Parent Petition, and one parent resides in Tennessee." The trial court also decided that the children should remain in Michigan with Wife, granted Husband parenting time, and ordered Husband to pay retroactive child support.

Based upon these events, we find that Tennessee was not the "home state" of the children on the date of the commencement of this proceeding as defined in Tennessee Code Annotated section 36-6-205(7). Tenn. Code Ann. § 36-6-205(7) (emphasis added); *see also Thrapp v. Thrapp*, No. E2006-00088-COA-R3-CV, 2007 WL 700963, at *6 (Tenn. Ct. App. Mar. 8, 2007) (holding that Tennessee did not have home state jurisdiction because the mother and her son had lived in Tennessee for only three consecutive months).

Our inquiry into jurisdiction does not end with determining whether Tennessee had "home state" jurisdiction. Under Tennessee Code Annotated section 36-6-216, it is possible for the courts of this state to acquire jurisdiction over the children by other means, one of which is "extended home state jurisdiction." *See* Tenn. Code Ann. § 36-6-216 cmt. 1. According to Tennessee Code Annotated section 36-6-216(a)(1) "Tennessee courts still can have home state jurisdiction if three elements are met: (1) Tennessee was the home state for the children at any time within six months before commencement of these proceedings . . . ; (2) the children are absent from Tennessee; and (3) a parent continues to live in Tennessee." *Doss*, 2005 WL 946744, at *4. "This is referred to as six month 'extended home state jurisdiction.'" *Id.* However, it is clear that the first element of this test is not met because the children had only lived in Tennessee on one occasion for about three months. As such, Tennessee did not have "extended home state jurisdiction" because Tennessee was not "the home state for the children at any time within six (6) months before the commencement of the proceeding." Tenn. Code Ann. § 36-6-216(a)(1). Therefore, the trial court's determination that it had jurisdiction under Tennessee Code Annotated section

36-6-216(a)(1) as the children's home state was made in error.

Although Tennessee was not the "home state" for the children, Tennessee was still the appropriate state to exercise jurisdiction under the UCCJEA. "[H]ome state jurisdiction is not the only manner in which a Tennessee court can obtain jurisdiction." *Doss*, 2005 WL 946744, at *5. Under Tennessee Code Annotated section 36-6-216(a)(2), a court of this state has jurisdiction to make an initial custody determination if:

> (2) A court of another state does not have jurisdiction under subdivision (a)(1), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under § 36-6-221 or § 36-6-222, and:
>
> > (A) The child and the child's parents, or the child and at least one (1) parent or person acting as a parent, have a significant connection with this state other than mere physical presence; and
> >
> > (B) Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships[.]

Tenn. Code Ann. § 36-6-216(a)(2). Significant connection jurisdiction "can be found only where no other state qualifies as the child's home state, or the home state has declined to extend jurisdiction." *Hogan v. Hogan*, No. W2008-01750-COA-R3-CV, 2009 WL 2632755, at *8 (Tenn. Ct. App. Aug. 27, 2009) (citing Tenn. Code Ann. § 36-6-216(a)(2). We conclude that neither child had a "home state" as defined by the statute at the time of commencement of the proceeding because neither child lived in any one state for this entire six-month period. *See Doss*, 2005 WL 946744, at *3 (holding that neither child had a home state as defined by the statute because neither child lived in any one state for the entire six-month period). Furthermore, no other state had "extended home state jurisdiction" because the children had only lived in the United States for approximately four months at the time of the commencement of this proceeding.[5]

Pursuant to Tenn. Code Ann. § 36-6-216(a)(2), the question then becomes two-

---

[5] We note here that in making our determination that no other state had home state jurisdiction, we also considered Yemen as a state pursuant to Tennessee Code Annotated section 36-6-208(a), which provides that "[a] court of this state shall treat a foreign country as if it were a state of the United States for the purpose of applying this part." Pursuant to Tennessee Code Annotated section 36-6-216(a)(1), Yemen was not the home state on the date of commencement of the proceeding because the children were not living there at the time of the commencement of this proceeding. Furthermore, although the children had lived in Yemen for more than a six-month period and that period would have been within the six months before commencement of this proceeding, Yemen did not have "extended home state jurisdiction" because no parent continued to reside there. *See Doss*, 2005 WL 946744, at *4 (explaining the elements of "extended home state jurisdiction").

pronged: whether there was a significant connection to this state and whether there was substantial evidence available in this state. As stated in the statute, a significant connection with this state requires more than "mere physical presence." Tenn. Code Ann. § 36-6-216(a)(2)(A). In regard to substantial evidence available in this state, "[t]he jurisdictional determination should be made by determining whether there is sufficient evidence in the State for the court to make an informed custody determination. That evidence might relate to the past as well as to the 'present or future.'" Tenn. Code Ann. § 36-6-216 cmt. 2. In their three months in Tennessee, the children lived in an apartment with Wife, were enrolled in school, and received their shots for school. Husband lived in Tennessee, and remained there until he moved to Delaware on or about February 28, 2019. At the time of the commencement of this proceeding, neither Husband, Wife, nor the children had lived in any other state for as long or longer than they had lived in Tennessee. For these reasons, we find that the children and at least one parent had a "significant connection" with Tennessee other than mere physical presence. Tenn. Code Ann. § 36-6-216(a)(2)(A). Further, there was no other state, but Tennessee, with any significant connections to this family. *See State, Dep't of Children's Servs. v. T.M.B.K.*, 197 S.W.3d 282, 291 (Tenn. Ct. App. Feb. 8, 2006) (holding that there was no other state, but Tennessee, with any significant connections to the child and the mother). Additionally, there was also "substantial evidence" in Tennessee concerning the events that led to the filing for divorce. Tenn. Code Ann. § 36-6-216(a)(2)(B). Wife alleged that Husband abused her and the children while they lived in the apartment in Tennessee, and on one occasion, the police became involved because Husband had threatened Wife and the children with a gun. After the commencement of this proceeding, the trial court had also heard lengthy testimony from the parties regarding these issues.

We find that Tennessee was the appropriate state to exercise jurisdiction under Tennessee Code Annotated section 36-6-216(a)(2). As such, the trial court did not err when it made the initial custody determination concerning the parties' children in this matter in 2018.

### ii. Continuing Jurisdiction

Having determined that Tennessee properly exercised initial jurisdiction, we then turn to the issue of whether Tennessee had jurisdiction to enter its final custody order on September 30, 2020.

It is important to note here that "[j]urisdiction attaches at the commencement of a proceeding," which in this case was on February 26, 2018 when Husband filed his complaint for divorce. Tenn. Code Ann. § 36-6-217 cmt. 2; *see also* Tenn. Code Ann. § 36-6-205(5) ("'Commencement' means the filing of the first pleading in a proceeding."). When the trial court made its initial custody determination, it cemented "its exclusive, continuing jurisdiction until one of the statutory conditions to lift it occurred." *In re Apex R.*, 577 S.W.3d 181, 202 (Tenn. Ct. App. 2018); *see Mortiz v. Tulay*, No. E2013-01528-

COA-R3-CV, 2014 WL 5306789, at *7 (Tenn. Ct. App. Oct. 17, 2014) ("The trial court made an initial custody determination . . . pursuant to the parties' divorce, providing that court exclusive, continuing jurisdiction."). However, since Husband moved to Delaware in February 2019, neither the children nor a parent lived in Tennessee at the time of the entry of the final decree of divorce and permanent parenting plan. This event requires us to consider the provision in Tennessee Code Annotated 36-6-217. *In re Caleb F.N.P.*, No. M2013-00209-COA-R3-PT, 2013 WL 5783141, at *6 (Tenn. Ct. App. Oct. 25, 2013); *Busler v. Lee*, No. M2011-01893-COA-R3-CV, 2012 WL 1799027, at *2 (Tenn. Ct. App. May 17, 2012).

In regard to exclusive, continuing jurisdiction, Tennessee Code Annotated section 36-6-217(a) provides in part:
> (a) Except as otherwise provided in § 36-6-219, a court of this state which has made a child-custody determination consistent with this part has exclusive, continuing jurisdiction over the determination until:
>
> (1) A court of this state determines that neither the child, nor the child and one (1) parent, . . . have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships; or
>
> (2) A court of this state or a court of another state determines that the child, the child's parents, and any person acting as a parent do not presently reside in this state.

Tenn. Code Ann. § 36-6-217(a). This section sets out conditions under which a court may lose jurisdiction which it lawfully exercised at an earlier stage in the proceeding. "[I]f either of these events occurs, the Tennessee court loses its exclusive, continuing jurisdiction." *Earls v. Mendoza*, No. W2010-01878-COA-R3-CV, 2011 WL 3481007, at *7 (Tenn. Ct. App. Aug. 10, 2011). "The primary function of this section is to ensure either (1) that no state has a jurisdictional basis superior to Tennessee's jurisdictional basis or (2) that any state with a superior jurisdictional basis has declined to exercise jurisdiction." *Thrapp*, 2007 WL 700963, at *6.

On August 28, 2020, Husband filed a motion to dismiss or, in the alternative, relinquish jurisdiction of the children to the State of Michigan. Thereafter, the trial court entered a final decree of divorce and adopted the permanent parenting plan on September 30, 2020. On January 6, 2021, the trial court denied Husband's motion holding that it had subject matter jurisdiction and personal jurisdiction, it had continuing, exclusive jurisdiction over the custody of the children, and there were no other actions pending to which it could transfer jurisdiction over custody of the children.[6] Despite the fact that

---

[6] As previously stated, although Wife filed a complaint for divorce in Michigan, the complaint was

- 13 -

neither the children nor a parent lived in Tennessee, the trial court did not make a finding regarding Tennessee Code Annotated section 36-6-217(a)(2) in its order denying Husband's motion to dismiss. Instead, it found that it had "continuing, exclusive jurisdiction until it relinquishes same." For this reason, Husband argues on appeal that the trial court erred in retaining jurisdiction when it had lost continuing exclusive jurisdiction.

Even if the trial court had lost its exclusive, continuing jurisdiction, Tennessee Code Annotated section 36-6-217(b) provides that "[a] court of this state which has made a child-custody determination and does not have exclusive, continuing jurisdiction under this section may modify that determination only if it has jurisdiction to make an initial determination under § 36-6-216." Tenn. Code Ann. § 36-6-217(b). As such, we have explained that "even if a Tennessee trial court that has made a custody determination does not have continuing exclusive jurisdiction, it may nevertheless modify the existing custody order '*if it has jurisdiction to make an initial determination under § 36-6-216.*'" *Earls*, 2011 WL 3481007, at *9 (citing Tenn. Code Ann. § 36-6-217(b) (emphasis added); *McQuade v. McQuade*, No. M2010-00069-COA-R3-CV, 2010 WL 4940386, at *8 (Tenn. Ct. App. Nov. 30, 2010)). It follows then that "even in the absence of exclusive, continuing jurisdiction, under [Tennessee Code Annotated] § 36-6-217(b), the trial court below could modify its prior custody determination if it had jurisdiction to make an initial custody determination." *Id.*

We find our reasoning in *Moorcroft v. Stuart*, No. M2013-02295-COA-R3-CV, 2015 WL 413094, at *4-6 (Tenn. Ct. App. Jan. 30, 2015), to be instructive on this issue. In that case, we found that a "Kentucky court lost exclusive, continuing jurisdiction to modify its . . . temporary visitation order when both the Kentucky and Tennessee courts determined that neither Mother, Father, nor their children continued to reside in Kentucky." *Id.* at *6. Similarly, in our case, the trial court failed to recognize that Tennessee lost exclusive, continuing jurisdiction over its previous temporary orders regarding custody, parenting time, and the designation of the primary residential parent because neither Husband, Wife, nor their children continued to reside in Tennessee.[7] However, in *Moorcroft* we held that a Kentucky court would have retained jurisdiction to modify its temporary order under its statute for exclusive, continuing jurisdiction because it had jurisdiction to make an initial custody determination. *Id.*; *see* Ky. Rev. Stat. Ann. §§ 403.824(2), 403.822(1)(a). While *Moorcroft* dealt with Kentucky's version of the UCCJEA, we explained that Tennessee's version of the UCCJEA "has substantially the same language as the Kentucky version and both are derived from the same Model Act." *Id.*; *compare* Ky. Rev. Stat. Ann. § 403.822, *with* Tenn. Code Ann. § 36-6-216; *compare* Ky. Rev. Stat. Ann. § 403.824, *with* Tenn. Code Ann. § 36-6-217. Therefore, as we found for the Kentucky court in *Moorcroft*, the Tennessee court in this case retained jurisdiction to enter its final order adopting the permanent parenting plan on September 30, 2020, even

---

dismissed in February 2020.

[7] To reiterate, Husband had moved from Tennessee to Delaware in February 2019.

- 14 -

though it served as a modification of a temporary order and the family had moved before the conclusion of the proceedings.

Because we have previously found that the trial court had jurisdiction to make an initial custody determination pursuant to Tennessee Code Annotated section 36-6-216, the trial court retained jurisdiction to modify its prior custody determination, regardless of whether it had lost exclusive, continuing jurisdiction under Tennessee Code Annotated section 36-6-217. This is consistent with the plain language of Tennessee Code Annotated section 36-6-217(b), which states that "[a] court of this state which has made a child-custody determination and does not have exclusive, continuing jurisdiction under this section may modify that determination only if it has jurisdiction to make an initial determination under § 36-6-216." Tenn. Code Ann. § 36-6-217(b). Accordingly, we find that the trial court properly exercised jurisdiction under the UCCJEA.

### C. Relief on Default Judgment

Husband's third issue is whether the trial court erred when it granted relief outside the pleadings and request for relief on a default judgment. Husband divided this issue into subparts: (a) whether the trial court erred when it granted a judgment to Wife of $20,000.00 for an alleged loan to Husband which had not been mentioned or pled in Wife's counter-complaint; and (b) whether the trial court erred in granting Wife a lien on real property located in Yemen as collateral for the alleged $20,000.00 loan and attorney's fees, when no mention of the Yemen property was mentioned in the counter-complaint or prayer for relief.

On September 23, 2020, the trial court held a final hearing. Wife testified that she loaned Husband $20,000.00, and that Husband gave her the title to the real property in Yemen to hold as collateral until he paid her back. Although Husband's complaint was still outstanding, he neither asked any questions of Wife or her brother on cross examination, nor offered any proof or evidence. The trial court ultimately found that Wife currently held the deed to real property in Yemen owned by Husband as collateral for a $20,000.00 loan he obtained from her. Husband was ordered to repay the loan at a rate of $500.00 per month to Wife to satisfy his obligation to pay back the loan. In the event Husband did not satisfy this obligation and the arrearage owed to Wife by October 1, 2024, Wife would be awarded the real property and permitted to sell it to satisfy Husband's obligations. However, after the trial court's oral ruling, Husband did raise an objection that Wife was awarded relief and damages outside the pleadings. The trial court overruled the objection finding that the evidence supported the award and Wife's *ad damnum* included the language "[t]hat the Counter-Plaintiff be granted such other further specific or general relief to which she is entitled." Husband argued on appeal that he did not have the opportunity to participate in this hearing or to assert defenses to this relief. However, we find nothing in the record to confirm this argument.

- 15 -

In her counter-complaint, Wife specifically requested that the trial court "fairly and equitably divide between the parties all right, title, and interest in the parties' property and make a determination as to all separate and marital property belonging to the parties." Wife also requested she "be granted such other specific and general relief to which she is entitled." Pursuant to Tennessee Rule of Civil Procedure 54.03, "[a] judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment." We have explained that:

> The obvious reasons for the rule are that a party has a right to assume that the judgment following his or her default will not go beyond the issues presented in the complaint and the relief sought therein, . . . and that it would be fundamentally unfair to permit the complaint to lead the defendant to believe that only a certain type and dimension of relief was being sought and then to permit the court to give a different type of relief or a larger damage award.

*Owens v. Owens*, No. M2009-02540-COA-R3-CV, 2010 WL 2516879, at *2 (Tenn. Ct. App. June 23, 2010) (quoting *Pittman v. Pittman*, Nos. 01-A-01-9301-CH00014, 87-077, 1994 WL 456348, at *4 (Tenn. Ct. App. Aug. 24, 1994)). "In sum, . . . a default judgment may not extend to matters outside the issues raised by the pleadings or beyond the scope of the relief demanded." *Electric Controls v. Ponderosa Fibres of America*, 19 S.W.3d 222, 228 (Tenn. Ct. App. 1999) (citations omitted). Wife clearly requested that the trial court equitably divide the parties' property in her counter-complaint. The trial court made a ruling regarding an outstanding debt acquired during the marriage and property relevant to that debt, which was within the scope of the relief demanded by Wife in her counter-complaint. Therefore, we find that the trial court properly granted relief within the scope of the pleadings and the relief demanded.

### D. Statute of Frauds

Husband next argues that the judgment for $20,000.00, which was granted to Wife for an alleged loan made to Husband, violated the statute of frauds as no paper writing was entered into evidence by Wife. After reviewing the record, there is no indication that this issue was raised to the trial court. "[I]ssues not raised at trial are generally considered waived on appeal." *In re Aliyah C.*, 604 S.W.3d 417, 419 (Tenn. Ct. App. 2019); *see Lawrence v. Stanford*, 655 S.W.2d 927, 929 (Tenn. 1983) ("It has long been the general rule that questions not raised in the trial court will not be entertained on appeal."). Therefore, we find that Husband has waived the issue of whether the trial court's judgment violated the statute of frauds.

### E. Attorney's Fees

Husband's final issue is whether the trial court erred in granting attorney's fees in

- 16 -

the amount of $15,000.00 to Wife when no findings were made as to ability to pay or need of Wife. "It is well-settled that an award of attorney's fees in a divorce case constitutes alimony in solido." *Cain-Swope v. Swope*, 523 S.W.3d 79, 100 (Tenn. Ct. App. 2016) (citing *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 113 (Tenn. 2011)). Tennessee Code Annotated section 36-5-121(h)(1) provides in part that "alimony in solido may include attorney fees, where appropriate." Tenn. Code Ann. § 36-5-121(h)(1). This Court has stated that "[a]n award of attorney's fees is appropriate when the disadvantaged spouse's income is not sufficient to pay the spouse's attorney's fees and the divorce fails to provide the spouse with a revenue source, such as from the property division or assets from which to pay the spouse's attorney's fees." *Cain-Swope*, 523 S.W.3d at 100 (citing *Yount v. Yount*, 91 S.W.3d 777, 783 (Tenn. Ct. App. 2002)). "When determining whether to award attorney's fees, the trial court must consider the relevant factors regarding alimony set forth in Tenn. Code Ann. § 36-5-121(i)." *Id.* "[W]here the spouse seeking such an award has demonstrated that he or she is financially unable to procure counsel, and where the other spouse has the ability to pay, the court may properly grant an award of attorney's fees as alimony." *Bounds v. Bounds*, 578 S.W.3d 440, 449 (Tenn. Ct. App. 2018) (quoting *Gonsewski*, 350 S.W.3d at 113)). Additionally, "trial courts are afforded wide discretion in determining whether there is a need for attorney's fees as alimony in solido, and the trial court's decision will not be disturbed on appeal absent an abuse of discretion." *Cain-Swope*, 523 S.W.3d at 100 (citing *Gonsewski*, 350 S.W.3d at 113).

The trial court awarded a judgment against Husband for $15,000.00 for Wife's attorney's fees and litigation expenses incurred. However, the trial court failed to make any findings as to Husband's ability to pay or Wife's need. Therefore, we vacate the trial court's award of attorney's fees to Wife and remand to the trial court for consideration of the relevant factors regarding alimony in solido, to make findings of fact and conclusions of law, and to enter judgment accordingly. *See id.* at 86 (quoting *Gooding v. Gooding*, 477 S.W.3d 774, 783 (Tenn. Ct. App. 2015)) ("If the trial court fails to explain the factual basis for its decisions, the appellate court 'may . . . remand the case with instructions to make the requisite findings of fact and conclusions of law and enter judgment accordingly.'").

## V. CONCLUSION

For the aforementioned reasons, we vacate the trial court's award of attorney's fees to Wife, but affirm on all other issues. The case is remanded for further proceedings consistent with this opinion. Costs of this appeal are taxed to the appellant, Ahmed Mote Alzamzami, for which execution may issue if necessary.

_____
CARMA DENNIS MCGEE, JUDGE